## NASHVILLE INTERURBAN RY. v. BARNUM.

(Circuit Court of Appeals, Second Circuit. March 11, 1914.)

No. 120.

1. COURTS (§§ 405, 424*)—DECISIONS REVIEWABLE—JUDICIAL CHARACTER OF TRIBUNAL.

Under Rev. St. U. S. § 649 (U. S. Comp. St. 1901, p. 525), authorizing the trial of issues of fact in a Circuit Court without a jury when the parties so stipulate in writing, and Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1167 [U. S. Comp. St. Supp. 1911, p. 243]) § 291, providing that when in any law any reference is made to or any power conferred upon

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Circuit Courts, such reference shall be deemed to refer to and confer such power upon the District Courts, the District Courts may try issues of fact without a jury when the parties waive a jury trial, notwithstanding Rev. St. U. S. § 566 (U. S. Comp. St. 1901, p. 461), requiring the trial of issues of fact in such courts except in equity cases, etc., to be by jury, since though in form the Judicial Code abolished the Circuit Courts, it in fact merged them with the District Courts, and transferred all the machinery for disposing of business possessed by the Circuit Courts to the District Courts, and hence the rule that a trial in the District Court without a jury by consent amounts to an arbitration and cannot be reviewed no longer applies.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103, 1119, 1125–1129; Dec. Dig. §§ 405, 424.*]

2. APPEAL AND ERROR (§ 1010*)—REVIEW—QUESTIONS OF FACT.
Under Rev. St. U. S. § 649 (U. S. Comp. St. 1901, p. 525), providing that the finding of the court on a trial without a jury shall have the same effect as a verdict, where there is competent evidence to support a finding of fact, it is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4024; Dec. Dig. § 1010.*]

3. TRIAL (§ 395*)—FINDINGS—FORM.
Findings that plaintiff had not shown by a preponderance of proof facts, the burden of proving which was on plaintiff, while inartificial and not directly stating the ultimate facts, were sufficient.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 927–934, 939; Dec. Dig. § 395.*]

4. APPEAL AND ERROR (§ 1008*)—REVIEW—QUESTIONS OF FACT.
The trial court's refusal to find other facts is as conclusive on appeal as its findings; the error, if any, consisting in its failure to give sufficient weight to the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3960, 3962–3969; Dec. Dig. § 1008.*]

5. WITNESSES (§ 331½*)—IMPEACHMENT—PARTICULAR ACTS.
Letters written by a witness, not relating to the issues involved, were not admissible to impeach his credibility, as extrinsic testimony to particular acts is inadmissible.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 331½.*]

6. WITNESSES (§ 330*)—CROSS-EXAMINATION—SCOPE—DISCRETION OF COURT.
It is within the discretion of the trial court to restrict the scope of cross-examination as to matters wholly unconnected with the case, and claimed to be relevant only as affecting the witness' credibility.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1106–1108; Dec. Dig. § 330.*]

In Error to the District Court of the United States for the Southern District of New York.

Writ of error to review a judgment entered in the District Court for the Southern District of New York. Affirmed.

The plaintiff is a corporation organized under the laws of the state of Tennessee. The defendant is a resident of the city and state of New York and president of Lawrence Barnum & Co., a corporation organized under the laws of the state of New York. The case was tried by the District Judge sitting without a jury, pursuant to a written stipulation signed by the plaintiff and the defendant. An attempt by the plaintiff to review the judgment by notice of appeal resulted in an order of this court, entered on November 20, 1913, dismissing the appeal.

The Nashville Interurban Railway had projected a line of railway out of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the city of Nashville, Tenn., and had entered into a contract with the Central Construction Company for its construction. On March 20, 1907, the officers of these companies met in New York City with the defendant, who was and is the president of Lawrence Barnum & Co., and entered with him into certain agreements on behalf of their respective corporations. The railway company was represented by its president, H. H. Mayberry, and the construction company by its president, Judge Pitts. Two agreements were signed by these corporations; the signatures being affixed by their respective presidents. One of these was called an underwriting agreement, the other a collateral agreement.

The contention of the plaintiff was as follows: That the defendant was told that there were 15 directors of these two companies, but that only 5 of them had any financial interest, and that the financial interests in the companies were held by these 5 and by 1 outside man who was not a director of either company, the names of these 6 gentlemen being given, viz., Pitts, Mayberry, Baxter, Landis, and the two Franks, one of whom was, and one not, a director. The defendant stated that he would be satisfied if the guaranty provided for in the collateral agreement for the performance of certain features thereof should be signed by these six men, and he was assured by Mayberry that without doubt he (Mayberry) could get them to sign it.

On the 20th of March the parties negotiating the transaction signed the papers and executed the notes, and handed to defendant a draft for $37,500, which was the amount of his commission, payable in cash. Mayberry took the carbon copy of the underwriting agreement and the original copy of the collateral contract and left with defendant the carbon copy of the collateral contract and the original of the underwriting agreement, together with the notes and draft. The contentions of the plaintiff were: That the papers were deposited with him personally, and not as representing Barnum & Co., and that Mayberry was to proceed at once to procure the signatures of the four interested parties, who were absent, and upon doing so that the contracts were to be exchanged and the deal go into effect; that the draft defendant was at liberty to have cashed, and in case of miscarriage, the money was to be returned along with the other papers; that there was a miscarriage, and that Mayberry was never able to obtain the signatures of the other directors, so that the papers never became effective.

The defendant's contentions were as follows: That he told Pitts and Mayberry that he would accept their guaranty alone as satisfactory, and that the papers went into effect at once; that Mayberry was told that he was at liberty to obtain the guaranty of the other four persons interested, and that if their guaranty was obtained, the defendant agreed that he would exchange the papers, otherwise the matter stood as final in its then form; that an immediate delivery of the papers was made, and that Lawrence Barnum & Co. is entitled to retain the $37,500 and the notes (aggregating altogether $150,000) for services rendered in lending its credit by signing the underwriting agreement.

Dallas Flannagan, of New York City (Martin W. Littleton and Dallas Flannagan, both of New York City, of counsel), for plaintiff in error.

Hornblower, Miller & Potter, of New York City (William B. Hornblower, Charles A. Boston, George S. Hornblower, and Frank B. Washburn, all of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The plaintiff in this case claims to have deposited in escrow with the defendant a sight draft for $37,500. It admits that defendant was authorized to collect the proceeds of the draft at once, but asserts that he was to hold the amount when collected on the same terms and

conditions, and subject to the same escrow agreement, as certain other papers and contracts deposited by it with defendant. The defendant, however, turned the money over to Lawrence Barnum & Co., and that corporation is still in possession thereof. The terms and conditions of the escrow agreement not having been complied with as understood by the plaintiff, the action was instituted to recover the amount of the draft. The defendant claims that in turning over the draft to Lawrence Barnum & Co. he was acting in accordance with the original agreement. This case was tried to the court without a jury. There was a special finding of facts, accompanied by a conclusion of law, and upon these there was a judgment for defendant, dismissing the complaint with costs. The plaintiff took exceptions to the findings and also excepted to the conclusion of law on the ground that the findings of fact did not sustain the conclusion of law.

[1] We are confronted with the question of the power of this court to consider the findings of fact made by the court below.

The Revised Statutes, § 566, provided as to the District Courts, as follows:

"The trial of issues of fact in the District Courts, in all causes except cases in equity and cases of admiralty and maritime jurisdiction, and except as otherwise provided in proceedings in bankruptcy, shall be by jury."

It will be conceded that the District Courts were originally without authority to decide a question of fact without a jury. Whenever they undertook to do so by consent of parties waiving a jury, the proceeding was not judicial in its nature, but amounted to an arbitration. And in such case the court's action was not subject to re-examination in an appellate court.

Mr. Justice Taney, speaking for the court in 1858 in Campbell v. Boyreau, 21 How. 223, 226 (16 L. Ed. 96), stated the law on this subject, and the reason for it, as follows:

"The finding of issues in fact by the court upon the evidence is altogether unknown to a common-law court, and cannot be recognized as a judicial act. Such questions are exclusively within the province of the jury; and if, by agreement of parties, the questions of fact in dispute are submitted for decision to the judge upon the evidence, he does not exercise judicial authority in deciding, but acts rather in the character of an arbitrator. And this court, therefore, cannot regard the facts so found as judicially determined in the court below, nor examine the questions of law, as if those facts had been conclusively determined by a jury or settled by the admission of the parties. Nor can any exception be taken to an opinion of the court upon the admission or rejection of testimony, or upon any other question of law which may grow out of the evidence, unless a jury was actually impaneled, and the exception reserved while they were still at the bar. The statute which gives the exception in a trial at common law gives it only in such cases. And as this court cannot regard the facts found by the judge as having been judicially determined in the court below, there are no facts before us upon which questions of law may legally and judicially have arisen in the inferior court, and no questions, therefore, open to our revision as an appellate tribunal."

The Supreme Court has recently announced the same doctrine in Campbell v. United States, 224 U. S. 99, 105, 32 Sup. Ct. 398, 56 L. Ed. 684 (1911).

But the Revised Statutes provided as to the Circuit Courts as follows:

"Sec. 648. The trial of issues of fact in the Circuit Courts shall be by jury, except in cases of equity and of admiralty and maritime jurisdiction, and except as otherwise provided in proceedings in bankruptcy, and by the next section."

"Sec. 649. Issues of fact in civil cases in any circuit court may be tried and determined by the court, without the intervention of a jury, whenever the parties, or their attorneys of record, file with the clerk a stipulation in writing waiving a jury. The finding of the court, upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury."

It thus appears that as respects the Circuit Courts, express provision was made for a written waiver of a jury. In those courts when a jury was waived by written stipulation and the case was tried to the court, the proceeding remained judicial, not being converted into an arbitration. This left the findings of fact by the trial judge to be dealt with on writ of error in the same manner as the findings of a jury would be.

And when the Circuit Courts were abolished it was provided as follows:

"Wherever, in any law not embraced within this act, any reference is made to, or any power or duty is conferred or imposed upon, the circuit courts, such reference shall, upon the taking effect of this act, be deemed and held to refer to, and to confer such power or impose such duty upon, the district courts." Section 291 of the Judicial Code.

Although in form the Judicial Code abolished the Circuit Courts and turned their business over to the District Courts, it seems to us that what Congress intended was a merger of the Circuit Courts into the District Courts, and that in transferring to the District Courts the business of the Circuit Courts, there was given to the District Courts, under the section of the Judicial Code above quoted, all the machinery for disposing of its business which the Circuit Courts possessed. We are unable to understand that section in any other way. It is also illuminative of this intent that Congress did not repeal the particular section which provided for trial by the Circuit Courts under written stipulation. If the intention had been that thereafter all cases tried in the District Courts, whether original or transferred, should be tried only under the old District Court system, the section became obsolete and was without any reason for its retention. We are therefore forced to the conclusion that the present case must be treated by us precisely as it would have been treated had the trial taken place in the old Circuit Court under the practice which Congress had once approved for that court and which it has never disapproved.

[2] We must therefore accord to findings of fact, in a case tried to the court without a jury, there being a stipulation in writing waiving the jury, the same effect as we would give to a verdict. As said by Mr. Justice Miller in Bassett v. United States (1869) 9 Wall. 38, 40 (19 L. Ed. 548):

"When a court sits in place of a jury and finds the facts this court cannot review that finding. If there is any error in such case, shown by the record, in admitting or rejecting testimony, it can be reviewed here. But when the

court, by permission of the parties, takes the place of the jury, its finding of facts is conclusive, precisely as if a jury had found them by verdict."

We may, of course, look into the record to discover whether there is competent evidence to support the finding. And we may look into it to find whether the court erred in the conclusion of law deduced by it from the facts found, and we may review errors alleged to have been committed as to the admission and rejection of testimony when the action of the court in this respect has been duly excepted to, and the right to question the same has been preserved on the record. But farther than that we have no right to go. Young v. Amy, 171 U. S. 179, 18 Sup. Ct. 802, 43 L. Ed. 127 (1898).

[3] The court made seven findings of fact in the case at bar, and the most important of these are the second and fourth which read as follows:

"(2) That the plaintiff has not shown by a preponderance of proof that it was agreed between the plaintiff and defendant that the collateral contract and underwriting should be delivered to the defendant upon condition that they should be redelivered by the defendant to the plaintiff in case the said guaranty was not procured by the plaintiff."

"(4) That it was agreed that the draft should be cashed, but that the plaintiff has not shown by a preponderance of proof that it was agreed that the defendant should procure the proceeds to be turned over by him, and by him to be turned over to the plaintiff, if the guaranty above mentioned was not procured."

Counsel for plaintiff insists that the above findings are not ultimate findings of fact at all. It must be admitted that the findings are rather inartificial for the findings of a trial court. The findings do not directly state the ultimate facts. But they do state the net result of the evidence as to the facts. The words, "by a preponderance of proof," used in the findings, may be disregarded as mere surplusage. The findings are that the agreements which are the subject of the two findings were not proved. We do not believe that any valid distinction exists between the formal sufficiency of a finding that there is no proof and of a finding that there is not enough proof to preponderate over opposing proof. In Stanley v. Supervisors of Albany (1887) 121 U. S. 535, 547, 7 Sup. Ct. 1234, 1237 (30 L. Ed. 1000) the principal finding of the court was:

"That the plaintiff has failed to establish the allegations in said complaint, that the several assessments," etc.

Mr. Justice Field, referring to this finding, says "the court below specially found the negative" of plaintiff's allegations. But this form of the finding did not prevent the court from affirming the judgment. In a recent case in the New York Court of Appeals a finding began, "There is no proof that," and another began, "There is no evidence that," and the court unanimously overruled the exceptions to the findings. The court said:

"The quoted findings are, therefore, findings that the plaintiff has failed to establish that branch of his case."

It pointed out that:

"A finding that there is no evidence is radically different from an affirmative finding which merely recites evidence, but contains no conclusion of fact." Ryan v. Franklin, 199 N. Y. 347, 92 N. E. 673.

We do not, therefore, attach importance to the fact that findings 2 and 4 are negative in form. We also are satisfied that there is evidence in the record which supports the findings. Whether this court would have made the same findings from the evidence is not at all the question, and is wholly immaterial.

In a case in the Supreme Court in 1842 Mr. Justice Story, speaking for the court, declared:

"We have no authority, as an appellate court, upon a writ of error, to revise the evidence in the court below, in order to ascertain whether the judge rightly interpreted the evidence or drew right conclusions from it. That is the proper province of the jury, or of the judge himself, if the trial by jury is waived, and it is submitted to his personal decision." Hyde v. Booraem, 16 Pet. 169, 176 (10 L. Ed. 925).

The real questions which are presented to this court seem to arise out of objections made on behalf of the plaintiff to the determination of the facts in the court below. As that determination, however, is not reviewable, there is nothing this court can do but affirm the judgment. For if we must accept the findings, the conclusion of law which the court reached from the findings is one that is clearly justified.

[4] We are not only concluded by the findings of fact but are equally concluded by a refusal to find other facts. Stanley v. Supervisors of Albany, supra. A refusal to find other facts, if error at all, is an error committed in not giving sufficient weight to the evidence offered. And this court is as much concluded as respects the one kind of error as it is in respect to the other.

[5] Objection was made to the refusal of the trial court to admit in evidence the letters addressed by one of the witnesses to his wife, and also those written by him to another woman. The letters in question did not relate in any way to the issues involved, but were offered solely for the purpose of impeaching the credibility of the witness. The court was unquestionably right in excluding the letters. Extrinsic testimony to particular acts is universally conceded to be inadmissible. And the principle is so well established that no discussion of it is necessary. 2 Wigmore on Evidence §§ 977–988.

[6] Objection was also made to the refusal of the court to allow the cross-examination of the witness in respect to his conduct in certain particulars wholly unconnected with the case in hand, and which was claimed to be relevant only as affecting his credibility. The action of the court in restricting the cross-examination of the witness in the manner it did was within the trial court's discretion. The leading case on this subject in this country is that of Third Great Western Turnpike Co. v. Loomis, 32 N. Y. 127, 88 Am. Dec. 311 (1865). The reasons for the rule which denies to counsel the latitude upon cross-examination which counsel in this case are contending for are admirably set forth

in the New York case. To recognize the existence of such a right in counsel the New York court said would—

"embody in our system of jurisprudence a rule fraught with infinite mischief. It will subject every witness who, in obedience to the mandate of the law, enters a court of justice to testify on an issue in which he has no concern to irresponsible accusation and inquisition in respect to every transaction of his life. * * * Questions of this nature can be determined nowhere more safely or more justly, than in the tribunal before which the examination is conducted. * * * A question, which is alike degrading to answer or decline to answer, should never be put, unless, in the judgment of the court, it is likely to promote the ends of justice. A rule which would license indiscriminate assaults on private character under the forms of law would contribute little to the development of truth, and still less to the furtherance of justice."

Judgment affirmed.