### SHIVELY v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. June 27, 1924. Rehearing Denied August 4, 1924.)

No. 4186.

1. **Criminal law ⬅⇒423(5)—Statements of a defendant held admissible against a codefendant.**

On trial of defendant, charged with another of possession and sale of liquor in violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), in pursuance of a conspiracy between them, where there was other evidence of the conspiracy, statements made by his codefendant, while making sales of liquor, that defendant was his partner, and of his activities in connection with the business, *held* admissible.

2. **Witnesses ⬅⇒344(I)—Extrinsic testimony to particular acts not admissible to impeach witness.**

Extrinsic testimony to particular acts is inadmissible to impeach a witness.

3. **Jury ⬅⇒131(13)—Court has discretionary supervision over examination of jurors.**

Action of the court in requiring all general questions in examination of jurors to be addressed to the entire panel *held* within its discretion.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Criminal prosecution by the United States against Clarence H. Shively. Judgment of conviction, and defendant brings error. Affirmed.

G. F. Vanderveer, of Seattle, Wash., for plaintiff in error.

Thomas P. Revelle, U. S. Atty., and J. W. Hoar, Sp. Asst. U. S. Atty., both of Seattle, Wash.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge. The plaintiff in error and one Clark were by indictment charged in two counts with certain designated violations of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼

---

⬅⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

et seq.), pursuant to a conspiracy alleged to have been entered into by and between them and certain other parties not to the grand jury known.

The first count alleged in substance that, after the formation of such conspiracy, Clark and Shively, from November 7, 1922, to the time of the presentment of the indictment, maintained certain rooms in the city of Seattle, within the jurisdiction of the court below, to wit, apartments 208 and 106 of the Jackson Apartments; that in pursuance of the alleged conspiracy both of the named conspirators on the 18th day of December, 1922, in said apartment 208, willfully and unlawfully possessed and sold certain described intoxicating liquor prohibited by the Act of Congress, and on the 21st day of the same month, in the same place, willfully and unlawfully possessed and sold certain other specifically described intoxicating liquor prohibited by law, and on the 15th day of January, 1923, in the same place, willfully and unlawfully possessed and sold certain other specifically described intoxicating liquor, and on the 5th day of February, 1923, in the same place, willfully and unlawfully possessed and sold certain other specifically described intoxicating liquor in violation of the statute mentioned, and on the 19th day of February, 1923, in the same place, willfully and unlawfully possessed and sold certain other specifically described intoxicating liquor in violation of the statute mentioned, and on the 22d day of February, 1923, in the same place, willfully and unlawfully possessed and sold certain other specifically described intoxicating liquor contrary to the statute mentioned, and on the 22d day of February, 1923, willfully and unlawfully possessed and sold certain other specifically described liquors, "containing more than one-half of 1 per centum of alcohol by volume and then and there fit for use for beverage purposes, such possession by the said conspirators as aforesaid being then and there for the purpose of violating the National Prohibition Act, by selling, bartering, exchanging, giving away, furnishing, and otherwise disposing of said intoxicating liquors, and such possession of said intoxicating liquor being then and there unlawful and prohibited by the National Prohibition Act." By count 2 the named conspirators were alleged to have maintained in the said mentioned apartments a "common nuisance, by then and there manufacturing, keeping, selling, and bartering intoxicating liquor, to wit, whisky, gin, rum, brandy, distilled spirits, beer, and other intoxicating liquors containing more than one half of 1 per centum of alcohol by volume and fit for use for beverage purposes."

The plaintiff in error pleaded not guilty to the indictment, and as to him a trial was had, resulting in his conviction upon each count. The law is, as expressly declared by the Supreme Court in American Fur Company v. United States, 27 U. S. (2 Pet.) 358, 7 L. Ed. 450:

"That where two or more persons are associated together for the same illegal purpose, any act or declaration of one of the parties, in reference to the common object, and forming a part of the res gestæ, may be given in evidence against the other."

[1] The first specification of error relied upon by the plaintiff in error is, in effect, that the trial court erred in permitting the witness Whitney to testify, over objection thereto, that, on December 18, 1922,

in apartment 208 of the Jackson Apartments, in the absence of Shively, Clark had said to him, in answer to the witness's interrogation, "Yes, that is my partner out there; he is a little bashful, perhaps, he don't want to come in;" and in permitting the same witness to testify, over like objection, that, on February 5, 1923, in the same apartment, in the absence of Shively, Clark had told the witness that "Shively was out, and had just brought in a load of 20 cases of liquor."

That there was testimony tending to show that the alleged conspiracy existed, and that the testimony so objected to related to occurrences during its existence and in furtherance of it, plainly appears in this excerpt from the testimony of the witness Whitney, Assistant Federal Prohibition Agent for the state of Washington: That on December 18th he visited apartment 208 of Jackson Apartments with Mrs. Whitney, was admitted by defendant Clark, from whom they purchased drinks of gin and Scotch whisky; that a number of other visitors had been at the apartment that evening, and were served in the dining room by Mr. Shively; and that Mr. Clark referred to Mr. Shively as his partner, and also told of smuggling whisky from Canada; that on December 21st and February 5th, together with Mrs. Whitney, he again visited said apartment, on both occasions was admitted by the defendant Clark, from whom he purchased a number of drinks of gin, whisky, and one bottle of rum, defendant Shively being present in apartment on both occasions; that on December 21st, in presence of defendant Shively, the defendant Clark referred to him as his partner, and then Whitney purchased from the defendant Clark rum and whisky, for which he paid in the presence of defendant Shively, and on that night he heard the defendant Shively making liquor sale over the telephone. On January 15th he visited the apartment with his wife and Prohibition Agents McDermott and Jessie Simpson, and again purchased a number of drinks from the defendant Clark, and defendant Shively being again present, and on February 19th he again visited the apartment with his wife and Mrs. Mooring, the wife of Prohibition Agent H. V. Mooring, and were again admitted by the defendant Clark, who sold them a number of drinks. The defendant Shively was not present when they arrived, but came in later. On February 22d the witness again returned to apartment 208, accompanied by his wife, Prohibition Agent McDermott, and Mrs. Mooring, the wife of Prohibition Agent Mooring, were admitted by the defendant Clark, and ordered two rounds of drinks, both of which were ordered from and served by the defendant Shively, but paid for to the defendant Clark.

A number of other prohibition agents had been previously stationed outside of the apartment, and upon a signal from those within they raided the place, arresting the defendants, took a marked $5 bill from the defendant Shively, and searched both apartments 106 and 208, finding a large quantity of assorted intoxicating liquors in the former place. The witness testified that on the occasion of each visit they were able to save and remove in small bottles a portion of the drinks served, which were identified and admitted in evidence. On each occasion that the witness visited apartment 208, the defendant Clark talked a good deal about his personal life, his partner, their liquor

caches, the boats they owned, and their business in general. On December 18th the defendant Clark referred to "we" and his partner, and—

"I said, 'Is your partner this man who is in the other room?'

"Mr. Vanderveer: I object to that as hearsay, so far as Mr. Shively is concerned.

"The Court: This can only be considered by the jury against Mr. Shively, in the event the court would give the instruction and the jury would find a conspiracy had been entered into.

"Mr. Vanderveer: An exception.

"A. And he said, 'Yes, that is my partner out there.' He said, 'He is a little bashful, perhaps, he don't want to come in.' Mr. Shively did come to the door of the parlor that night, and came in, in his shirt sleeves, as I say."

On February 5th the defendant Clark again talked freely in the same general vein to the witness and his wife, in the absence of the defendant Shively. In connection therewith the witness testified, in response to the question:

"State what happened that night, Mr. Whitney. A. Clark had told us, prior to Shively coming in, that Shively was out, and had just brought in a load of 20 cases."

The admission of that testimony was in accordance with the rule of law above stated, and in no wise contrary to the decision of this court in the case of Holsman et al. v. United States, 248 Fed. 193, 196.

[2] The second specification of error relied on by the appellant grows out of his offer in evidence of an unsigned copy of a portion of what was claimed to have been a letter written by the witness Whitney to a woman, whose name it is not necessary to mention, the vulgarity of which is inconceivable—the contention being that it was admissible as bearing upon the credibility of that witness. The court had permitted the appellant to introduce testimony that his reputation in the community in which he lived was bad; "he could not speak the truth," said the witness Maud Sweetman. The extract so sought to be introduced had no reference to any of the acts or circumstances involved in the inquiry before the jury, but related only to suggestions between the witness and the woman of the grossest indecency imaginable. We have no hesitancy in holding that the trial court was entirely right in rejecting the offer.

Nor do we think the court below erred in refusing to permit counsel for the appellant to impeach the veracity of the witness Kinan by showing that she was living with a man not her husband. As said by the Circuit Court of Appeals for the Second Circuit in Nashville Interurban Ry. v. Barnum, 212 Fed. 634–640, 129 C. C. A. 170:

"Extrinsic testimony to particular acts is universally conceded to be inadmissible. And the principle is so well established that no discussion of it is necessary"—citing 2 Wigmore on Evidence, §§ 977–988.

While we have no disposition to in any way depart from the rule regarding entrapment laid down by this court in the cases of Woo Wai v. United States, 223 Fed. 412, 137 C. C. A. 604, Sam Yick v. United States, 240 Fed. 60, 153 C. C. A. 96, and Peterson v. United States, 255 Fed. 433, 166 C. C. A. 509, we do not think the testimony in the present case brings it within that doctrine.

[3] It is also contended on the part of the appellant that the trial court erred in the matter of the impaneling of the jury. The only suggestion made in support of that point which we think worthy of mention is that, after the counsel for the defendant had examined three jurors separately, the court directed him to propound all *general* questions to the entire panel, while not restricting or preventing him from questioning them separately as to any special inquiry, to which action of the court exception was taken. A similar question was presented to this court in the case of Fredericks et al v. United States, 292 Fed. 856, 858, where it was here said:

"Plaintiffs in error excepted to the action of the court in refusing to allow them to ask each juror this question: 'Could defendants rely upon you to vote for no verdict except what you thought was right, irrespective of what the other jurors did, except as they might influence you by legitimate argument? The fact that seven or eight, or even more, of the other jurors voted differently from what you thought was the right verdict would not influence you to vote that way?' The court criticized the question, and stated that the inquiry should be whether the jurors knew anything about the case, or had any preconceived notions about it, to the jury 'en masse,' and counsel should not repeat the same question to each individual juror. Under any view that might be taken, the court in its ruling did not abuse the sound discretion that generally must control in its supervision over the inquiry into the qualification of jurors. Connors v. United States, 158 U. S. 408, 15 Sup. Ct. 951, 39 L. Ed. 1033."

The judgment is affirmed.

⬯⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes