## THE PACIFIC.

*(District Court, D. Maryland.* November 27, 1883.)

ENGINEER ON STEAM-TUG—TERM OF SERVICE—DISCHARGE—NOTICE.

An engineer was employed on a steam-tug used about a harbor, at a certain rate per month, but without any agreement as to the duration of his service. *Held,* in the absence of proof of any settled usage, that he could be discharged at any time without previous notice, and could recover only for the time actually served.

In Admiralty.

*A. Stirling, Jr.,* for libelant.

*Venable & Packard,* for respondents.

MORRIS, J. The libelant was employed as an engineer on the steam-tug Pacific, plying in the harbor of Baltimore, and having been discharged without previous notice on the sixth of December, 1882, he sues for the balance of his wages at $50 per month and the value of his meals for the remainder of the month of December. The libelant entered the employment of the steam-tug company on the ninth of May, 1881. His wages for the fraction of that month were settled up at the end of it, and after that he drew on account during the month what money he needed, and at the end of each month there was a settlement. It appears that he had been once before in the employment of this steam-tug company, and when, in May, 1881, he applied for a position as engineer, he was told to go on board the Pacific at $50 a month and nothing more was said. The libelant claims that he was employed by the month, and that his employment could only be terminated, unless for cause, by a month's notice, to take effect at the end of a month.

Unless the verbal contract proved is controlled by usage or custom, or some presumption of law or fact, it must be held to be a general or indefinite hiring, and, I take it, the law as to such a contract is correctly stated in Wood, Mast. & Serv. 272:

" With us the rule (different from the English rule) is inflexible that a general or indefinite hiring is *prima facie* a hiring at will, and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, or year, no time being specified, is an indefinite hiring. and no presumption attaches that it was for a day even, but only at the fixed rate for whatever time the party may serve. It is competent for either party to show what the mutual understanding of the parties was in reference to the matter, but unless their understanding was mutual that the service was to extend for a certain fixed and definite period, it is an indefinite hiring, and is determinable at the will of either party. * * * Thus it will be seen that the fact that compensation is measured at so much a day, month, or year, does not necessarily make such hiring a hiring for a day, month, or year, but that in all such cases the contract may be put an end to by either party at any time unless the time is fixed, and a recovery had at the rate fixed for the services actually rendered."

The contract in this case is therefore to be governed by the law as above stated, unless there is some usage or custom to the contrary, or unless there is something in the peculiar employment or circumstances of the parties which makes it unreasonable to hold that they could have intended to enter into a contract determinable at will.

As to the alleged custom there is really no proof at all in support of it. The libelant says he always supposed the custom was to give a month's notice or a month's pay, and did not suppose he could be discharged without notice.

The only other witnesses for the libelant was Mr. Hill, an engineer, who has served many years on tug-boats in this port, and all he can say is that he has always contended that he could serve to the end of the month. On the other hand, the manager and treasurer of the tug company say they never heard of such a custom, and have never acted upon it, but discharge the company's employes without notice, and pay them for the time they have served.

The master and the mate of the Pacific both say they never heard of employes on tugs either giving or receiving notice, and that they are paid only to day of discharge. This is all the proof adduced with regard to the alleged custom, and falls far short of proving it.

Looking, then, to the special employment of the libelant as engineer on a tug used in the harbor and on the bay, is there anything in that employment which would make it unreasonable to hold that the libelant could be discharged before the end of the month, and without notice? Mariners of all kinds are usually employed for the voyage, and their term of service expires with the voyage, although their wages may be at a fixed rate per month, unless there is a special contract fixing it differently. And if such a hiring as the present one is to be regulated by any analogy to other hirings on shipboard, it would seem that with regard to a tug plying about the harbor and returning to her berth at the close of the day, and particularly where, as in this case, the employes do not sleep on board, that each day's cruising is a voyage; or if she goes out of the harbor her return completes that voyage. The reason for libelant's dismissal in the present case appears to have been that he did not "get along well" with the master of the tug, and although it is not shown that he was to blame for this, it is clear that the tug could not be properly operated unless there was harmony and good feeling among those on board. The necessity for such harmony is apparent, and is, I think, an argument to show that it is not unreasonable that the owners of the tug should have the right to promptly dismiss any of the employes.

I am of opinion that the general rule with regard to an indefinite hiring must prevail in this case, and that the libelant has failed to show either a settled usage or special circumstances to modify that rule. Libel dismissed.