## RAZUKAS v. NEW YORK TRAP ROCK CO.

(District Court, D. New Jersey. August 2, 1918.)

1. SEAMEN ⬤⇒19—DISCHARGE—NOTICE—WAGES.

In the absence of proof of usage or custom of the port, a captain employed on a scow at a certain rate of wages per month for an indefinite term may be discharged at any time, either during or at the end of the month, without previous notice, and may recover wages only for the time actually served.

2. SEAMEN ⬤⇒29(1)—DISCHARGE—USE OF FORCE.

Where a captain of a scow has been lawfully discharged by his employer, the employer may use reasonable force to overcome the employé's physical resistance in being removed from the scow.

3. SEAMEN ⬤⇒31—ACTION FOR LOSS OF GOODS—EMPLOYER'S LIABILITY.

In an action by the captain of a scow for loss of household goods and clothing when the scow capsized in a storm, the employer could not be held liable for negligence in loading or navigating the scow, when at the time of the accident neither the tug towing the scow nor the owner were acting on defendant's behalf, but on behalf of the charterer.

4. SEAMEN ⬤⇒31—ACTIONS FOR LOSS OF GOODS—LIABILITY OF EMPLOYER—EVIDENCE.

In an action by the captain of a scow to recover for household goods and clothing lost when the scow capsized during a storm, evidence *held*

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not to show that the scow was unseaworthy, in that its decks were rotten and full of holes.

5. SEAMEN ⬥⟳31—ACTION FOR LOSS OF GOODS—BURDEN OF PROOF—EVIDENCE.
    In an action by a captain of a scow against his employer to recover for household goods and clothing lost when the scow capsized during a storm, evidence *held* not to sustain libelant's burden of proof that the employer failed in his duty to libelant, and that such failure was the proximate cause of the loss.

In Admiralty. Libel by August Razukas against the New York Trap Rock Company. Decree entered for libelant.

Runyon & Autenreith, of Jersey City, N. J. (Edmund S. Johnson, of Jersey City, N. J., on the brief), for libelant.
Frederick W. Park, of New York City, for respondent.

RELLSTAB, District Judge. The libel is in personam and contains three claims: For wages; for personal injuries on being ejected from a scow of which libelant was in charge; and for the loss of goods and chattels. Libelant was in the employ of respondent. He was made captain of the scow Ruth, and subsequently of the scow Wandell.

[1] 1. As to the claim for wages: The respondent admits liability "for three days' pay at the rate of $50 per month, less a credit of $1 on account of the same." Libelant was hired on September 14, 1915, at the rate of $50 per month. He worked on the scow Ruth until the middle of November that year, when he was transferred to the scow Wandell. He continued on the latter until December 4th following, when he and his family were forcibly ejected therefrom. On the day previous he was notified that he was discharged, and told to remove from the boat. This he refused to do. There is a dispute as to the exact words of hiring and the reasons for his discharge, but it is agreed that the service was for an indefinite period.

There is no satisfactory evidence from which the court can find that there is any settled custom in the waters of New York Harbor, or those adjacent thereto, as to what is necessary for either party to terminate such a hiring. In The Rescue (D. C.) 116 Fed. 380, Judge McPherson, of this circuit, following The Pacific (D. C.) 18 Fed. 703, held:

"In the absence of proof of any settled usage or custom of the port, an engineer employed for a vessel at a certain rate of wages per month, without any specified term of service, may be discharged at any time, either during or at the end of a month, without previous notice, and can recover wages only for the time actually served."

These cases are cited and adopted by The Pokanoket (C. C. A. 4) 156 Fed. 241, 84 C. C. A. 49. Their reasoning is satisfactory and will be followed on the matter of wages in the instant case, with the result that no more than is admittedly due will be allowed.

[2] 2. As to the claim for personal injuries: On December 3, 1915, libelant had been notified of his discharge and given opportunity to remove his family and belongings from the boat. Like notice and opportunity were given him on the following day, when he was ejected. He

⬥⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

persisted in remaining on the boat, and forcibly resisted being put off. Considerable force was used in ejecting him, but the evidence warrants the conclusion that no more force was used than was reasonably necessary to effect his removal. His discharge being lawful, reasonable force to overcome his physical resistance to being removed from the scow was also lawful.

[3] 3. As to the claim for loss of goods: This claim is for household goods, clothing, etc., of libelant and his family, which were in the cabin of the scow Ruth when it capsized in a storm on Long Island Sound on the evening of November 15, 1915. The libelant claims that the capsizing of the scow was due to its being unseaworthy, overloaded, and improperly navigated. At that time, it was chartered to the Haverstraw Crushed Stone Company; and the tug Blakeslee, which had charge of the tow of which the Ruth was the hawser boat, was owned and operated by the New Haven Trap Rock Company. At that time neither tug nor owner was acting for or on behalf of respondent, and the latter cannot be held responsible for any negligence (if there was any) in the loading or navigating of the scow.

[4] As to the scow's alleged unseaworthiness: This is said to exist in the absence of lifeboats and life preservers, and in that its decks were rotten and full of holes. The lack of life-saving apparatus manifestly in no way contributed to the capsizing of the scow and the consequent loss of libelant's goods. The libelant's contention that the decks were rotten and filled with holes is testified to by him and his wife. Mr. Martin, who constructed the Ruth and repaired her, both before and after she capsized, denied that the decks were in such condition, and affirmed that they were in good condition, and that the scow was fit for the service engaged in at the time she capsized.

The respondent's assigned cause of the scow's capsizing is that it was due to injuries received during her continuous bumping with scow No. 38, the one next to the Ruth in the tow, and not to any unseaworthiness existing before that time. This tow, loaded with stone, encountered a severe storm on Long Island Sound, on its way from Orchard Beach, Conn., to New York. It had passed Norwalk, when the tug, in response to a signal of distress from the Ruth, came alongside of her and, at the libelant's request, took off his wife and two small children, who had become frightened. The tug thereupon straightened up its tow and proceeded for about half an hour, when she was again given a distress signal. Before the tug was signaled the sea had washed over the decks of the Ruth, carrying some of the smaller stones (screenings) away. Up to that time the water entering the hold of the scow was well taken care of by the pumps. However, between the time of the slackening of the hawser in response to the first signal of distress and the straightening of the tow preparatory to resuming the journey, the Ruth and scow No. 38, no longer kept apart by the taut hawser, came violently into contact with and repeatedly bumped against each other through the action of the storm, wind, and waves. This undoubtedly injured both scows, for shortly thereafter the water entered into their holds more rapidly, and in greater volume

than their pumping facilities could control, and they began to sink. This necessitated the casting adrift of these two scows. Subsequently they capsized, and the goods of libelant on board the Ruth were lost.

[5] To make the respondent liable for the loss of libelant's goods, it must be shown that it failed in its duty to the libelant, and that such failure was the proximate cause of the loss. This burden was on the libelant, and he has not met it. While the evidence as to the controlling cause of the capsizing of the Ruth is not as satisfactory as it could have been, it supports the respondent's assigned causes, rather than those of the libelant. The Ruth carried her cargo on her decks; therefore they could not have been very rotten. The entrance of the water into the Ruth was no doubt due to a number of causes. The heavy load it was carrying, with the resultant low freeboard, its position as the hawser boat in the tow, and the strong wind that was encountered, all contributed to produce a situation favorable to the sea's washing over its decks. Much of this water undoubtedly found its way into the Ruth's hold, but by the libelant's admission it was sufficiently disposed of by the scow's pumps until after the first distress signal was given. After the Ruth and scow No. 38 came into the violent contact referred to, a different condition was found to exist. The pumps no longer were able to care for the water that entered the scow's hold. Some additional cause must have been responsible for this radically changed situation. None other than that advanced by the respondent is suggested, and that is not merely plausible, but has sufficient probative force to warrant its acceptance as the controlling cause.

The libelant is entitled only to the conceded three days' pay at the rate of $50 per month, less $1 paid on account, for which a decree may be entered.

⬥⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.