### THE POKANOKET.

(Circuit Court of Appeals, Fourth Circuit. September 10, 1907.)

#### No. 727.

MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—DURATION OF EMPLOYMENT.
A verbal contract between the owner of a vessel and a marine engineer for the services of the latter, in which his wages were fixed at a stated sum per month, but without any specified term of employment, constituted a hiring at will, and not by the month, and, in the absence of any established usage to the contrary, either party had the right to terminate the employment at any time without notice, and, upon the employé's discharge, he was entitled to wages only to the time of such discharge.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 19.]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk.

John W. Oast, Jr., for appellant.
Henry Bowden, for appellee.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge. This is an appeal from a decree in admiralty entered by the District Court of the United States for the Eastern District of Virginia, at Norfolk. The appellee, Leslie B. Colgin, a marine engineer, for some time anterior to the making of the contract, which is the basis of this proceeding, was employed as chief engineer on a steamer called "The Aurora," which belonged originally to the James River Navigation Company. Subsequently this steamer was bought by the Newport News & Norfolk Steamboat Line, a corporation under the laws of Virginia, which corporation was also the owner of the steamer named "Pokanoket," the latter vessel being, at the time of the contract of employment, at St. Johns, Newfoundland. The contract of employment, as stated by the libelant in his testimony, was as follows:

"It was a verbal contract between Mr. Davis and me at Petersburg on the steamer Aurora, the steamer I was running on at that time, and he asked me if I would go to St. John and help him look at a boat, and if I would come down with her, and that my wages—he asked me what I would want a month and I gave him my price, $80 per month, to go chief, and I said I will go down and come with the boat, and he said the wages would be the same as when working on the Aurora, but the day she gets to Norfolk my pay would be $80 per month and start at that time. I was getting $70 per month on the Aurora."

The libelant went to St. Johns and brought the Pokanoket to Norfolk, arriving at the latter place on the 16th of May, 1906, and from the time of employment to that date he was paid at the rate of $70 per month. From the 16th of May, 1906, to the 1st of June following, he was paid at the rate of $80 per month and for the month of June he was paid $80, the last payment, to wit, for the month of June, having been made between the 1st and 5th of July, 1906. The libelant continued in the employment of the steamer Pokanoket, as chief engineer, until July 17, 1906, when he was discharged at Norfolk, Va., by George B. Townsend, the agent of the owner. The cause of the discharge, as claimed by the owner of the steamer, was inefficiency and incapacity on the part of libelant to properly manage and operate the machinery which he had in charge. At the time of the discharge the steamboat company proposed to pay the libelant the sum of $46.99, the amount of his wages for the 17 days in July at the rate of $80 per month. But libelant refused to accept it. The libelant states that he immediately sought work, but did not succeed in finding employment until August 1, 1906. A libel was filed by Colgin against the steamer Pokanoket, her tackle, apparel, etc., in the District Court for the Eastern District of Virginia, at Norfolk, Va., on the 1st day of August, 1906, the claim being for $80 wages for the month of July, 1906, and costs. The attachment and monition were served on the 2d day of August, 1906. In the due course of proceeding, the respondent filed its answer on the 10th day of September, 1906, denying the libelant's right to the sum of $80 wages for the month of July, 1906, and costs, but admitting that there was due him the sum of $46.99 for 17 days' work in July, 1906, at the rate of $80 per month. Respondent then and there tendered to the libelant the said sum of $46.99, with interest thereon from July 17, 1906, which he refused to

accept; whereupon respondent deposited the said sum, together with the interest, in the court, to be held subject to its orders.

There was some testimony, pro and con, upon the hearing as to Colgin's qualifications as a marine engineer—on his part that he was well-skilled and proficient as such, whilst respondent, on the other hand, offered testimony tending to show that he was not capable and well qualified. But, in our view of the case, this controversy is not material. The chief point presented is the construction of the contract under which the libelant was employed. He insists that it was by the month, and that it was a violation of its terms to discharge him except upon a month's notice. The District Court took this view and entered a decree for the libelant for $80, the full month's wages for July, 1906, and for costs. In this we think there was error. The contract, which is fully set out in the testimony of the libelant as given above, has, in our opinion, the effect to determine the measure of compensation, but does not fix a definite period of employment. In other words, the contract constitutes nothing more, in law, than what is known as a hiring at will, which could be ended at any time, by either party, without notice. There was no evidence of any settled usage or custom of the port which would take the contract in this case out of the rule which governs such contracts generally. There is nothing in the contract of employment which can be construed to mean that the libelant was required to serve the employer for any specified time; nor is there anything to indicate that the employer was bound to retain him in service for a definite period. The continuance of the term of service was left discretionary with both parties, and either had a right to put an end to it at any time.

In the case of The Pacific (D. C.) 18 Fed. 703, an engineer was employed on a steam tug used about a harbor at a certain rate per month, but without any agreement as to the duration of his service. Held, in the absence of proof of any settled usage, that he could be discharged at any time without previous notice, and could recover only for the time actually served. The learned judge (Morris), in delivering the opinion in this case, said:

"Unless the verbal contract proved is controlled by usage or custom, or some presumption of law or fact, it must be held to be a general or indefinite hiring, and, I take it, the law as to such a contract is correctly stated in Wood, Master & Servant, 272."

The quotation from Wood is as follows:

"With us the rule (different from the English rule) is inflexible that a general or indefinite hiring is prima facie a hiring at will, and, if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, or year, no time being specified, is an indefinite hiring and no presumption attaches that it was for a day even, but only at the fixed rate for whatever time the party may serve. It is competent for either party to show what the mutual understanding of the parties was in reference to the matter, but, unless their understanding was mutual that the service was to extend for a certain fixed and definite period, it is an indefinite hiring and is determinable at the will of either party. * * * Thus it will be seen that the fact that compensation is measured at so much a day, month, or year does not necessarily make such hiring a hiring for a day, month, or year, but in all such cases the contract may be put an end to

by either party at any time, unless the time is fixed and a recovery had at the rate fixed for the services actually rendered."

Following in the same line is the case of The Rescue (D. C.) 116 Fed. 380, in which Judge McPherson, of the Eastern District of Pennsylvania, holds that:

"In the absence of proof of any settled usage or custom of the port, an engineer employed for a vessel at a certain rate of wages per month, without any specified term of service, may be discharged at any time, either during or at the end of a month, without previous notice, and can recover wages only for the time actually served."

The conditions of employment and the terms of the contracts in these two cases were substantially the same as in the case here.

In Edwards v. Seaboard & Roanoke Railroad Co. et al., 121 N. C. 490, 28 S. E. 137, the Supreme Court of the state (Chief Justice Faircloth delivering the opinion) upholds the same doctrine, and declares the law to be that:

"Where a letter from an employer stated, 'You have been appointed general storekeeper of the System, to take effect July 15th. Your salary will be $1,800 a year'; and the appointee entered upon his duties and received $150 per month until he was discharged—*held*, that the contract was not an employment by the year, the reasonable construction of the contract being that the parties intended that the service should be performed for the price that should aggregate the gross sum annually, leaving the parties to sever their relations at will."

We might cite, almost without number, decisions in the American jurisdictions to the same effect, but we do not deem it necessary. We conclude, therefore, that the libelant is only entitled under the contract to recover of the respondent compensation at the rate of $80 per month for the 17 days actually served in July, 1906, and that the decree of the District Court should be modified to that extent. The decree is reversed and the case remanded to the District Court of the Eastern District of Virginia, to the end that a decree in harmony with the views herein expressed may be entered.

Reversed.