## WARDEN v. HINDS.

(Circuit Court of Appeals, Fourth Circuit. July 17, 1908.)

No. 786.

1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—DURATION OF EMPLOYMENT—"HIRING AT WILL."

A contract of employment, which states no term, but merely provides that the employé shall be paid a stated sum per week, constitutes a hiring at will, which may be terminated at any time by either party without notice.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 19.]

2. WILLS—CONTRACT TO MAKE BEQUEST—ACTION FOR BREACH.

An action at law to recover damages for alleged breach of a contract to make a bequest of a certain sum to plaintiff by will cannot be maintained during the lifetime of the proposed testator.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 179.]

In Error to the Circuit Court of the United States for the Eastern District of Virginia, at Richmond.

W. D. Carter and Robert H. Talley, for plaintiff in error.

Scott & Buchanan, for defendant in error.

Before PRITCHARD, Circuit Judge, and BOYD and DAYTON, District Judges.

BOYD, District Judge. In this case, Nellie R. Hinds, the defendant in error, who was the plaintiff below, and who will hereafter be called the plaintiff, brought a suit at law in the Circuit Court of the United States for the Eastern District of Virginia, at Richmond, against Henry Warden, the plaintiff in error, who was the defendant below, and who will hereafter be called the defendant. The plaintiff filed her declaration in trespass on the case in assumpsit and sought to recover of the defendant damages in the sum of $15,000 for breach of contract of employment. The plaintiff alleged, in substance: That in the month of April, 1904, the defendant, who was then 48 years of age, and who was engaged in business in the city of Fredericksburg, Va., desired the services of the plaintiff as an amanuensis, stenographer, and typewriter, and induced the plaintiff to give up a lucrative business in the city of Philadelphia and accept employment with the defendant at the compensation of $25 per week, beginning on the 18th day of April, 1904; that said employment was to continue as long as the defendant lived, and at his death there was to be paid from his estate to the plaintiff the sum of $5,000. The written evidence of the contract, as set out in the record, is the following letter:

"Fredericksburg, Va., 4, 17, 1904.

"Miss N. R. Hinds, No. 667 Bourse Building, Phila.—Dear Madam: I wish to conclude the arrangement we talked about on Friday, and you can consider yourself in my employ from the moment you receive this letter. Your salary of twenty-five dollars per week will begin from to-morrow and you are to report here at the earliest possible moment. In consideration of the fact that, in entering my employ, you are giving up an established business of greater or less value (its value to you being indicated by the salary I have

agreed to give you) it is my intention to add a codicil to my will bequeathing to you the sum of five thousand dollars, this to recompense you for the above business and to enable you to re-establish yourself, should I die within the next few years. It is my intention, even should I live to a good old age, that this bequest shall stand and be in force.

"Hoping that you will be able to report for work in a very few days, I am       Yours sincerely,                    [Signed]  Henry Warden."

The plaintiff entered the employment of defendant under this contract and continued in his service until the 16th day of April, 1905, when defendant discharged her, as she alleges, without cause, and she brought this suit. The defendant, through his counsel, filed his plea of nonassumpsit in the usual form and thus raised the issue. The cause was tried at Richmond, in said district, beginning on the 16th day of October, 1907, and a verdict rendered for plaintiff in the sum of $2,478.05. Judgment was accordingly entered thereon by the court, and defendant sued out his writ of error from this court. At the close of the testimony, the defendant requested the court to charge the jury that plaintiff was not entitled to recover and to direct a verdict for the defendant. This request was refused, and the defendant excepted. The court, in the instructions to the jury, held that the contract contained in the letter of April 17, 1904, set out in the declaration, was a binding contract consummated between the parties and constituted a general hiring to do and perform the services contracted for; that it was a hiring without fixing the duration of service and was presumed to be a hiring for a year, one revolution of the seasons. The defendant's counsel duly excepted to this instruction. The court further instructed the jury:

"You are further charged that if you believe from the evidence that the defendant wrote the plaintiff the letter of 17th of April, 1904, which letter concluded the contract of employment between them, and one of the provisions of which is as follows: 'In consideration of the fact that in entering my employ you are giving up an established business of greater or less value (its value to you being indicated by the salary I have agreed to give you) it is my intention to add a codicil to my will bequeathing to you the sum of $5,000, this to recompense you for the above business, and to enable you to re-establish yourself should I die within the next few years. It is my intention, however, even should I live to a good old age, that this bequest shall stand and be in force'—and that the plaintiff, in accepting the said contract and entering upon said employment, gave up an established business in the city of Philadelphia, such as was mentioned in the provisions of the said contract, and moved to the city of Fredericksburg, and there entered upon the service called for in said letter, and faithfully performed all of the duties required of her in the premises, and that the defendant thereafter and without justifiable cause discharged the plaintiff from said employment, and repudiated the arrangement to make provision for her as thus contemplated, by said codicil, then the undertaking to make such provision by adding a codicil to his will constituted a binding contract upon him properly enforceable in equity against his estate, or for the breach of which damages can be recovered at law against him in his lifetime."

To this instruction defendant's counsel then and there duly excepted. The defendant's counsel requested, among others, the following instructions, both of which were refused by the court, and to the refusal to give each of which the defendant's counsel duly excepted:

"The jury is charged that under the evidence in this case there is no definite period fixed for the duration of the employment of the plaintiff by the

defendant, and therefore the same is merely a contract at will, terminable by either party at any time without notice, and no liability rests upon the defendant to pay the plaintiff any salary subsequent to her discharge on July 15, 1905.

"The court charges the jury that the expression by the defendant in this case to the plaintiff of an intention to add a codicil to his will bequeathing money to the plaintiff, though conclusively proven and subsequently repudiated by the defendant, does not render the defendant liable in any amount whatever to the plaintiff in damages, and no damages can therefore be awarded the plaintiff to compensate her for any alleged loss growing out of the failure, or refusal of the defendant to execute such codicil."

The jury returned a verdict in favor of the plaintiff against the defendant, assessing plaintiff's damages in the sum of $2,478.05, and for this amount the court rendered judgment, with interest on the amount of $2,478.05, from the date of the trial, and for costs. In the course of the trial there were other exceptions than those above stated, taken by defendant's counsel; but the exceptions presented by the instructions which the court gave and the exceptions based upon the instructions refused are those alone which we deem it necessary to consider in order to dispose of this case.

We do not think that the terms of employment, as set forth in the letter written by defendant to plaintiff on the 17th of April, 1904, can be construed into a contract from year to year. The duration of employment is altogether indefinite. The compensation was $25 per week, and there was no fixed period for plaintiff's service to the defendant. Under these circumstances, it is our conclusion that the contract should be construed as a hiring at will, which could be ended at any time by either party without notice. We do not think it necessary to cite authorities to sustain this view of the contract, so far as the duration of employment is concerned, further than to refer to a case recently decided by this court, The Pokanoket, 156 Fed. 241, 84 C. C. A. 49. We think therefore there was error in the instruction that, under the contract contained in the letter above referred to "it was a hiring without fixing the duration of service and was presumed to be a hiring for the year, one revolution of the seasons," and there was also error in the refusal of the court to give the instruction requested by defendant's counsel that "the jury is charged that under the evidence in this case there is no definite period fixed for the duration of employment of plaintiff by the defendant and therefore the same is merely a contract at will, terminable by either party at any time, without notice, and no liability rests upon the defendant to pay the plaintiff any salary subsequent to her discharge on July 15, 1905." This brings us to the consideration of that part of the letter of the defendant in which he expressed his intention to make a codicil to his will bequeathing to the plaintiff the sum of $5,000 to recompense her for her business (established in Philadelphia) and to enable her to re-establish herself, and so forth.

The grounds upon which the plaintiff bases her right to sue for damages for defendant's failure in respect to the $5,000 which he had promised to bequeath to her by his will are that the promise was not a nudum pactum, or a mere gratuity, but was a valid contract founded on a valuable, or at least a sufficient, consideration, in that she, in order

to enter the service of defendant, gave up an established business of more or less value in the city of Philadelphia, and she alleges in her declaration that she had established a lucrative business as a stenographer and typewriter in the city of Philadelphia, which was then and there worth to her a large sum, and so forth, and that the defendant, in discharging her without cause, committed a breach of this contract, and that thereby a cause of action accrued to her. We do not deem it necessary in the case before us to pass upon the merits of this contention of the plaintiff. The question for us is whether the plaintiff, if her position be tenable, has a present cause of action which can be maintained in a court of law.

The trial judge held that such cause of action existed, and instructed the jury, as before stated, that if they believed from the evidence (which was the written contract contained in defendant's letter of April 17, 1904, set out hereinbefore) that the plaintiff in accepting the said contract and entering upon such employment gave up an established business in the city of Philadelphia, such as was mentioned in the provisions of said contract, and moved to the city of Fredericksburg, and there entered upon the service called for in said letter, and faithfully performed all the duties required of her in the premises, and that defendant thereafter and without justifiable cause discharged the plaintiff from said employment and repudiated the arrangement to make provision for her as thus contemplated by the said codicil, then the undertaking to make such provision by adding a codicil to his will constituted a binding contract upon him properly enforceable in equity against his estate or for breach of which damages could be recovered in law against him in his lifetime.

The verdict of the jury as to the present value of the $5,000 which was to be provided for plaintiff in the codicil to defendant's will was based upon an estimate made by an actuary, giving the age of the defendant at 47 years, and counting the net value of $5,000 insurance on a life at that age to be $2,378.05. This latter amount, with $100 added by the jury, makes the whole amount of the verdict. Now, assuming that the expressed intention of the defendant, as set out in his letter to the plaintiff, to make a codicil to his will and bequeath her the sum of $5,000, was a contract based upon sufficient consideration to support it, when could a breach of it occur such as to entitle the plaintiff to bring her suit? All the authorities agree that one may, for a valuable consideration, and in some instances a good consideration, renounce the absolute power to dispose of his estate at pleasure and bind himself by a contract to dispose of his property by will to a particular person, and that such contract may be enforced in the courts after his decease, either by an action for a breach against the personal representative or in the proper case by a bill in the nature of specific performance against his heirs, devisees, or personal representative. Johnson v. Hubbell, 10 N. J. Eq. 332, 66 Am. Dec. 773. However, we have been unable to find any case in which the right to recover damages in an action at law for an alleged breach of such contract during the life of the testator has been upheld. Indeed, the principle generally declared is that such contracts are susceptible of enforcement only after the death of the testator by bill in equity for specific performance,

and it is well said in the case of Bolman v. Overall, 80 Ala. 451, 2 South. 624, 60 Am. Rep. 107:

"The principle upon which courts of equity undertake to enforce the execution of such agreements is referable to its jurisdiction over the subject of specific performance. It is not claimed, of course, that any court has the power to compel a person to execute a last will and testament, carrying out his agreement to bequeath a legacy, for this can be done only in the lifetime of the testator, and no breach of the agreement can be assumed so long as he lives, and after his death he is no longer capable of doing the thing agreed to be done. There can be no doubt but that a person may make a valid agreement binding himself legally to make a particular disposition of his property by last will and testament. The law permits a man to dispose of his property at his pleasure, and no good reason can be assigned why he may not make a legal agreement to dispose of his property to a particular individual or for a particular purpose as well by will as by a conveyance to be made at some specific future period or upon the happening of some future event. It may be unwise for a man in this way to embarrass himself as to the final disposition of his property, but he is the disposer by law of his own fortune and the sole and best judge as to the time and manner of disposing of it. A court of equity will decree the specific performance of such an agreement upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction."

In the case of Rivers v. Rivers, Executors, 3 Desaus. (S. C.) 195, 4 Am. Dec. 609, the court, in sustaining the propriety of a court of equity recognizing and enforcing such an agreement, very properly remarked:

"A man might renounce every power, benefit, or right which the law gives him, and he will be bound by his agreement to do so, provided the agreement be entered into fairly, without surprise, imposition, or fraud, and that it be reasonable and moral."

The case of Johnson v. Hubbell, supra, which is a leading case upon the subject we have under discussion, and in which, we may say, almost every view of the question is presented, was a bill in equity filed by the complainant to have specific performance as to the disposition of property which his father had agreed to make by will and failed to do so. The facts are substantially these: Hannah Johnson, the mother of the complainant, at the time of her marriage with complainant's father, Robert Johnson, was possessed of large and valuable property. During the coverture she joined with her husband in the sale of a part of her property for a consideration of $20,000, which was received by the husband and expended in the improvement of property which he held in his own right. The mother died, leaving the father and two children, the complainant, and a sister surviving, and at the time of her death she left real estate of the value of about $80,000. By the laws of New Jersey the complainant was entitled by inheritance to two-thirds and his sister to one-third of the estate of their mother, and the father, Robert Johnson, was tenant by the courtesy of his deceased wife's real property. The father was also the owner of a large estate in his own right, and in this situation he entered into an agreement with his son, the complainant, by which the son conveyed to his sister an equal interest in the mother's property, the father agreeing to make them equal in his will; otherwise upon the refusal of the son to divide equally the mother's estate, the father declared

his purpose to leave the larger portion of his estate to the daughter. The sister was present and concurred in this arrangement, and, as before stated, the complainant conveyed to her one-half of the deceased mother's property. The father died leaving a will by which he entirely cut off and excluded the complainant from all right and participation in his estate. The court held that this contract was enforceable in equity, that it was founded upon sufficient consideration, and that, the father having failed to provide in the will for the son as he had agreed to do, in consideration of the fact that the son was parting with property to which he was legally entitled, the court would decree specific performance according to the terms of the original agreement, and, to quote the language of the opinion:

"In this case the son performed his part of the agreement. He paid a valuable consideration and parted with his property."

But, as will be seen, no cause of action accrued to the plaintiff until the death of his father, because it was not known until that event that the father would disregard his part of the agreement, and it is said in one of the notes to the case:

"It is obvious that an agreement to make a certain disposition of property by devise is one which, strictly speaking, will not support an action in the party's lifetime, because any testamentary instrument is by its nature revocable. No one can tell what it will be until the maker dies, and he has his whole life in which to perform the covenants."

Numerous authorities are cited to support this principle.

As before suggested, we do not consider it necessary at this juncture to pass upon the validity of plaintiff's claim as respects the provision to be made for her by a codicil to defendant's will; but, however that may be, it is our opinion that whatever her right is, and whether her remedy be by action at law for breach of the contract or by bill in equity for specific performance, her cause of action does not accrue until the defendant's death, because, if defendant's letter can be construed into an enforceable contract to bequeath to plaintiff $5,000 by a codicil to his will, there can be no breach whilst the defendant lives, for to the very last moment of his life he may carry out his expressed intention. It is true there is authority for the position that in some instances under an agreement to bequeath property the person to whom the bequest is to be made may in the lifetime of the proposed testator, in order to prevent the loss of the property through extravagance or other misconduct of the latter, file a bill quia timet on the equity side of the docket to have such testator declared a trustee to the extent of the claim; but the elementary writers and the judicial decisions all seem to be in harmony in support of the proposition that upon an agreement to make a will an action at law does not lie during the lifetime of the proposed testator. It would seem that the fact that bills quia timet based upon contracts for the disposition of property by will are entertained, as stated above, in the lifetime of the proposed testator, gives additional strength to the position that an action to enforce the contract iself cannot be maintained until after his death.

For the reasons given we are of the opinion that there is error in the judgment of the Circuit Court below, and that the same should be reversed.

Reversed.