## AMERICAN MERCHANT MARINE INS. CO. v. LETTON.

(Circuit Court of Appeals, Second Circuit. January 4, 1926.)

No. 144.

I. Appeal and error ⏀⟹866(3)—Circuit Court of Appeals restricted to questions of law presented on review, where both sides moved for directed verdict.

Where counsel for both parties agreed that issues might be tried by court before jury of one, and both moved for directed verdicts, with stipulation accordingly, there was no submission of case to court without intervention of jury, within intendment of Rev. St. §§ 649, 700 (Comp. St. §§ 1587, 1668), which Circuit Court of Appeals could not review; but, there being no disputed questions of fact, review is restricted to findings of law, which must be affirmed, if supported by any evidence.

2. Contracts ⏀⟹15—All terms intended to be included in formal agreement must be shown to have been agreed on to constitute meeting of minds.

To constitute a meeting of minds of parties to make contract enforceable, all the terms which parties intend to include in formal agreement must be shown to have been agreed on.

3. Contracts ⏀⟹31—It is not necessary that there be formal writing, reducing terms agreed on to one paper, to make contract enforceable.

If a writing be entered into between parties, which shows a meeting of minds as to all terms, it is not necessary, to make an enforceable contract, that there be a formal writing, reducing terms to one paper.

4. Contracts ⏀⟹25—No court can give effect to matters in contract that have been left unsettled for future negotiations.

If terms of contract are left open to be settled in the future, minds of parties have not fully met, and no court may undertake to give effect to those stipulations that have been settled, or to make an agreement for parties respecting matters left unsettled.

5. Insurance ⏀⟹35—Letters between parties offering and accepting employment, with certain contingencies, held not to constitute contract of employment.

Where negotiations have been had relative to contract of employment, letters between insurance company and plaintiff, agreeing to employment of latter as vice president, director, and fire insurance manager on certain contingencies, *held* not to constitute a contract of employment.

6. Master and servant ⏀⟹8(I)—Employment without contract for definite period considered at will.

Employee, who entered employment without contract for definite period, must be considered an employee at will, and it is immaterial whether his salary was paid at certain rate per month or at fixed sum per year.

7. Frauds, statute of ⏀⟹44(3)—Oral contract for employment for five years void.

Under Personal Property Law N. Y. § 31, oral contract for employment for five years is void, and no oral agreements can be deemed to vary terms of letters relied on as constituting contract.

In Error to the District Court of the United States for the Southern District of New York.

Action by Harold W. Letton against the American Merchant Marine Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Cletus Keating, Roger B. Siddall, and Ira A. Campbell, all of New York City, of counsel), for plaintiff in error.

Hartwell Cabell, of New York City, for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. Defendant in error sued for breach of contract of employment. He was a vice president and director of the plaintiff in error for two years and four months, having been elected and appointed such after some negotiations. The plaintiff in error, engaged in the insurance business in New York, was desirous of ob-

taining the reinsurance business of the Prussian National Insurance Company, a German corporation, which ceased doing business in the United States during the war period, because its property was taken over by the Alien Property Custodian. The defendant in error was its representative in the United States, and continued to liquidate its outstanding affairs during this period of cessation. He and the president of the plaintiff in error negotiated in October, 1918, looking toward the consummation of a plan to have the reinsurance of the outside fire risks taken over by the plaintiff in error. A proposed written contract between the parties provided for the service of the defendant in error as vice president and fire insurance manager. It was submitted to, but was unacceptable to, the plaintiff in error, because of the powers given to the defendant in error. Later the parties exchanged letters as follows:

"October 30, 1918.

"H. W. Letton, Esq., Insurance Exchange Bldg., Chicago, Ill.—Dear Sir: I beg to advise you that we have made an offer to the Alien Property Custodian for a reinsurance of the outstanding business of the United States' branch of the Prussian National Insurance Company. If we should effect a contract for this reinsurance, we shall desire to secure your services for a period of not less than five (5) years, on terms mutually agreeable, as vice president and a director and fire insurance manager of this company, and we offer to enter into a contract in which the basic terms shall be a salary of not less than fifteen thousand (15,000) dollars and a contingent commission of ten (10%) per cent., for your employment. If you are willing to make this arrangement, please confirm by letter.

"Yours very truly,

"American Merchant Marine Ins. Co.,

"C. P. Stewart, President."

"October 30, 1918.

"American Merchant Marine Insurance Co., 56 Beaver St., New York City—Dear Sirs: I am in receipt of your letter of. October 30, 1918, and accordingly I beg to accept the offer for my employment as vice president, director and fire insurance manager of your company, and hereby agree to enter into a contract as set out in your letter provided you should acquire the business of the United States branch of the Prussian National Insurance Company, for which you state you have made an offer to the Alien Property Custodian.

"Yours very truly, H. W. Letton."

From these letters the plaintiff in error offered to the defendant in error that it would contract with him for his services "on terms mutually agreeable" at a salary. of $15,000 and a contingent 10 per cent. commission for a period of not less than five years. The defendant in error accepted to the extent of the contents of his letter of October 30, 1918. His right to succeed in this action rests entirely upon the question of whether the letters make out a contract of employment for a period of five years.

[1] At the outset, it is urged by the defendant in error that the controversy was submitted to the District Judge as the sole arbitrator; that therefore there was no jurisdiction in this court to review the judgment. At the trial, counsel for both parties agreed that the issues might be tried by the court before a jury of one, both sides making a motion at the close of the case for directed verdicts. A stipulation was made accordingly. Motions were made for the direction of a verdict, upon which decision was reserved, and thereafter the court filed an opinion, in which it directed a verdict in favor of the defendant in error. It is argued that this was in effect a waiver of a jury trial, and that this waiver, not being in writing in accordance with section 649 of the Revised Statutes (Comp. St. § 1587), it is beyond our power to review the questions of law presented.

In Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654, where each party requested the court to instruct the jury to return a verdict in. its favor, the court held that this was equivalent to a stipulation waiving a jury and submitting the case to the decision of the court, and said:

"From this premise two conclusions are deduced: First, that, there being no written stipulation, the decision below cannot be reviewed upon writ of error; second, that, even if the request in open court, made by both parties, be treated as a written stipulation, the correctness of the decision below cannot be examined, because it is in the form of a general finding on the whole case, and findings of the court upon the evidence are reviewable only when they are special. The request, made to the court by each party to instruct the jury to render a verdict in his favor, was not equivalent to a submission of the case to the court, without the intervention of a jury, within the intendment of Rev. Stat. §§ 649, 700 (Comp. St. §§ 1587, 1668). As, however, both parties asked the court to instruct a verdict, both affirmed that there was no disputed question of fact which could

operate to deflect or control the question of law. This was necessarily a request that the court find the facts, and the parties are, therefore, concluded by the finding made by the court, upon which the resulting instruction of law was given. The facts having been thus submitted to the court, we are limited in reviewing its action, to the consideration of the correctness of the finding on the law, and must affirm if there be any evidence in support thereof. Lehnen v. Dickson, 148 U. S. 71 [13 S. Ct. 481, 37 L. Ed. 373]; Runkle v. Burnham, 153 U. S. 216 [14 S. Ct. 837, 38 L. Ed. 694]."

We are referred to Campbell v. United States, 224 U. S. 99, 32 S. Ct. 398, 56 L. Ed. 684, where the case was tried without a jury, and there was no question of effect of cross motions to direct a verdict. It was pointed out that such a proceeding was a submission to an arbitrator, and that Rev. St. §§ 566, 649, and 700 (Comp. St. §§ 1583, 1587, 1668), do not make provisions for such a case in the District Court (but only in the Circuit Court). The court's determination of issues of fact and questions of law supposed to arise on its special findings is not a judicial determination, and therefore not subject to re-examination in the appellate court. By section 291 of the Judicial Code (Comp. St. § 1268), with the abolition of the Circuit Court, these sections of the Revised Statutes were made to apply to the District Court. Nashville Ry. Co. v. Barnum, 212 F. 634, 129 C. C. A. 170. Because there was no instruction by the judge to find a verdict, and no verdict by a jury, what was said in Virginia Iron Co. v. Woodside Cotton Mills Co. (C. C. A.) 6 F.(2d) 442, is also inapplicable. We are restricted in our review to the questions of law presented, and we may not disturb the findings of fact. Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038.

Reading the letters exchanged, it is clear that the parties signify a willingness to enter into the contract, but neither consider that the letters constitute such a document. Many essentials, as well as details, had to be agreed upon. The phrase of the defendant in error, "and hereby agree to enter into a contract as set out in your letter, provided you should acquire the business of the United States branch of the Prussian National Insurance Company, for which you state you have made an offer to the Alien Property Custodian," contemplated a future agreement. The parties had been unable to agree in their previous attempt. Apparently the letters signify

a willingness on the part of each to try it again. The basic fact of employment was agreed upon, but the terms "mutually agreeable" were still to be formulated and accepted. No further effort was made to have a formal contract executed. The matter was talked over on a number of occasions after these letters, and the defendant in error said he was willing to sign a contract whenever the plaintiff in error would agree to satisfactory terms, and would recede from the demands asserted in the proposed contract submitted in October. Apparently the plaintiff in error was unwilling to do so.

[2, 3] The two letters can be considered as no more than preliminary negotiations looking toward a formal contract. As we stated in Anderson & Co. v. Texas Co. (C. C. A.) 279 F. 76: "It is very difficult at times to determine upon which side of the line of demarkation between a contract and an agreement to make a contract a particular paper is to be placed. Williston on Contracts, § 28 et seq." But, as we stated there, a reliable test is whether the letters embody everything which the parties have agreed to do, assuming in that hypothesis that the "other necessary elements of a contract exist." All the terms which the parties intend to include in the formal agreement must be shown to have been agreed upon, to constitute a meeting of the minds of the parties to make the contract enforceable. And if a writing be entered into between the parties, which shows a meeting of the minds as to all the terms, it is not necessary, to make it an enforceable contract, that there be a formal writing reducing the terms to one paper. Hotel Woodward Co. v. Ford Motor Co., 258 F. 322, 169 C. C. A. 338; United States v. J. P. Carlin Co., 224 F. 859, 138 C. C. A. 449.

[4, 5] If the terms are left open to be settled in the future at conferences or negotiations between the parties, the minds of the parties have not fully met, and, until they have, no court may undertake to give effect to those stipulations that have been settled or to make an agreement for the parties respecting those matters that have been left unsettled. Scholtz v. Northwestern Co., 100 F. 573, 40 C. C. A. 556. Therefore, answering the question presented here, whether the parties meant to contract by their correspondence here, or whether they were only attempting settling the terms of an agreement into which they proposed to enter after all its particulars were adjusted, which was then to be formally drawn up, and by which they would

be bound, we hold that under all the undisputed circumstances, the parties did intend to enter into a subsequent agreement of employment for a period of five years upon terms thereafter to be arrived at which would be mutually agreeable, and that the letters here do not constitute a contract of employment for five years.

[6] The defendant in error did enter the service of the plaintiff in error, and was paid a salary all the time that he rendered services. He did not have a contract for a definite period, and must be considered an employee at will. It is immaterial whether his salary was paid at a certain rate per month, or at a fixed sum per year. The Pokanoket, 156 F. 241, 84 C. C. A. 49; Warden v. Hinds, 163 F. 201, 90 C. C. A. 449, 25 L. R. A. (N. S.) 529; Martin v. New York Life Ins. Co., 148 N. Y. 117, 42 N. E. 416; Watson v. Gugino, 204 N. Y. 535, 98 N. E. 18, 39 L. R. A. (N. S.) 1090, Ann. Cas. 1913D, 215. The fact that he was elected a vice president and director, and served as such for the time mentioned, does not change the character of this employment. He was paid in full for the services rendered to the plaintiff in error, and presents no claim for payment of services actually rendered. He cannot urge that either the letters or the statements of officers of the plaintiff in error fixed his term of employment for five years.

[7] There is no written document making out such a contract. Under the Personal Property Law of New York (Consol. Laws, c. 41) § 31, such an oral contract is void. It provides: "Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking (1) by its terms is not to be performed within one year from the making thereof." No oral agreements or undertakings could be deemed to vary the terms of the letters relied upon as constituting the contract between the parties.

To insist that the defendant in error has a five-year contract by such oral agreement runs counter to the statute of frauds. Ward v. Goelet, 230 F. 979, 145 C. C. A. 173. Where the contract is subject to the statute, changes as to form or statements as to understanding must be governed by the same requirements of form as original provisions. Imperator Realty Co. v. Tull, 228 N. Y. 447, 127 N. E. 263. It follows that the defendant in error has not a legal, binding contract to form the basis of recovery below.

Judgment reversed.