**FINDLEY v. RED TOP SUPER MARKETS, Inc., et al.**
**THE QUEEN ANNE.**
No. 13355.

United States Court of Appeals
Fifth Circuit.

May 10, 1951.

Rehearing Denied June 19, 1951.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Frank J. O'Connor, John P. Booth, Miami, Fla., for appellant.

W. F. Parker, Miami, Fla., for appellees.

Before HOLMES, McCORD and RUSSELL, Circuit Judges.

McCORD, Circuit Judge.

The M/V Queen Anne was libelled on June 17, 1949, by Red Top Super Markets, Inc., and thereafter further libel proceedings were filed by one Ukko Ahnger, acting individually and as trustee for crews' wages, by S. Appel & Co. and Hopkins-Carter Hardware Co. for supplies, and by Kenneth C. Braidman, doing business as Bert's French Cleaners, for supplies and services. The libels were consolidated, and the owner of the vessel, H. W. Findley, filed his answer claiming ownership in each of the respective causes.

The questions here presented are (1) whether one Hans G. Milton had authority to bind the owner of the vessel for the value of the supplies and services; and (2) whether the crew of the vessel is entitled to wages for a stated period subsequent to its discharge.

The material facts were stipulated. Briefly stated, they reveal that on the 25th of April, 1949, the M/V "Queen Anne" was sold at a United States Marshal's sale held in Miami, Florida, to the Claimant, H. W. Findley, residing at 4 Glass Street, Carnegie, Pennsylvania; that a Bill of Sale was issued to Findley by the United States Marshal, after which Findley left the vessel at Merrill-Stevens Dry Dock Company in order to have certain repair work done; that while the vessel was in dry dock one Hans G. Milton contacted the attorneys for the Claimant, H. W. Findley, in Miami, Florida, and represented to them that he had been negotiating with the owners of the vessel, and inquired about the arrival of certain papers and instructions; that when the papers and instructions concerning Milton did not arrive, he requested permission to go aboard the vessel for the purpose of taking an inventory; that Milton was granted permission by one Frank J. O'Connor, as attorney for the owner, to go aboard the vessel, then in the custody of Merrill-Stevens Dry Dock Company, for the purpose of taking an inventory; and that while he was aboard the vessel he ordered certain supplies and services from the libellants, which supplies were delivered and services performed, and for which payment is sought in these libel proceedings.

It was shown that Hans G. Milton went aboard the vessel on May 16th, purporting to assume the duties as Captain thereof, and that he remained aboard until May 30th, 1949; that shortly after going aboard he hired a crew for the vessel and placed them on the ship; that on May 30, 1949, no articles having been signed, the members of the crew were advised that Milton had not been authorized to employ them and they were instructed to leave the vessel; that the crew refused to leave until they had been paid for their services, and they were finally paid for services rendered through May 30, 1949, after which they signed a release for all claims up to that date, agreeing that such payment would not constitute any admission of liability on the part of the owner of the vessel, and that it was without prejudice to any claim which they might have or later assert as to their right to collect wages from May 30, 1949, until June 14, 1949, the day they left the

vessel. It is the above period for which the claim for crews' wages and subsistence is asserted in this proceeding. ;

■ We are of opinion these libellants have failed to carry their burden of proving that Milton had any authority, either actual or apparent, to bind the credit of the vessel or its owner for the value of the supplies and services furnished. The duty of suppliers of materials or services to a vessel to inquire as to the authority of the person ordering them has been clearly defined by our Court of Last Resort in the case of U.S. et al. v. Carver et al., 260 U.S. 482, at page 488, 43 S.Ct. 181, at page 182, 67 L.Ed. 361:

" * * * The Act of 1910 by which the transactions with the Clio were governed after enlarging the right to a maritime lien and providing who shall be presumed to have authority for the owner to procure supplies for the vessel, qualifies the whole in section 3 as follows: 'but nothing in this Act shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, *agreement for the sale of the vessel,* or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor.' We regard these words as too plain for argument. They do not allow the materialman to rest upon presumptions until he is put upon inquiry, they call upon him to inquire. To ascertain is to find out by investigation. If by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its terms he was chargeable with notice of its terms. * * *" See also, Title 46 U.S.C.A. §§ 971, 972 and 973.

■ Here, the vessel was never purchased or owned by anyone from whom Milton had authority to act. Moreover, the ownership of the vessel by the Claimant, Findley, was a matter of public record, and this fact, as well as Milton's lack of authority to bind the owner or credit of the ves-

sel, could have been readily ascertained by the suppliers upon a routine inquiry or investigation. This duty to exercise reasonable care and diligence in order to ascertain whether the person ordering the supplies and services for the vessel has authority to do so is a burden which the law imposes upon suppliers and materialmen. Any other rule would encourage laxity in our admiralty laws, and place a premium on fraud and collusion between dishonest masters and those who extend credit to a vessel. In this case it is without dispute that the suppliers made no inquiry as to the authority of Milton. Under such circumstances, the language of the court in the case of Morse Dry Dock & Repair Co. v. U.S., 2 Cir., 1 F.2d 233, 237–238, is particularly applicable here:

"In our opinion the Carver Case is decisive of the case now before the court. The libelant herein was bound to inquire, and had no right to rest upon presumptions. If he had inquired, if he had exercised reasonable diligence, he could certainly have ascertained the terms of the charter party, and that the Steamship Company, in ordering the repairs, was without authority to bind the vessels. * * *

* * * * * *

"In choosing to rely solely upon the loose statements made to it by an officer of the Steamship Company, it did so at its own risk, and must abide the consequences. The facts were readily ascertainable; the inquiry into the facts was a duty under the statute. And when a duty to make inquiry exists, it must appear that the one whose duty it was to inquire prosecuted his inquiry with all the care and diligence required of a reasonably prudent man. * * *"

■ We further find no justification for any further payments to the crew of the vessel for wages and subsistence after the date of their discharge. It is undisputed that the crew was advised on May 30, 1949, that Milton had no authority to employ them, and that they were requested to leave the vessel at that time. Furthermore, they have received payment for their services up until the date of their discharge. We know of no rule in admiralty law which

entitles them to more.[1] See The Pokanoket, 4 Cir., 156 F. 241; The Rescue, D.C., 116 F. 380.

The cause is hereby reversed and remanded with directions to vacate the decree and dismiss the consolidated libels, with costs to be taxed against libelants.

Reversed and remanded with directions.

RUSSELL, Circuit Judge (dissenting in part).

My view of the controlling effect of the facts in this case differs from that of the majority. There is ample support in the record for the finding of the commissioner, approved by the court, that the owner-claimant of the vessel by the acts of his attorney at law and of the agent having custody of the vessel permitted Captain Milton to board the vessel and become invested with apparent authority as its master. Even conceding the fact of the limitation upon his authority it was in no way announced or made known to persons dealing with him in good faith as master. If master, which position the owner had permitted him to assume, he presumptively had authority to bind the vessel for necessary supplies.[1] A secret limitation upon apparent authority is of course an entirely different matter from a limitation contained in a charter and may properly direct a different result. The facts here take this case without the rule of United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361. Even if the owner-claimant be not barred by conduct in the circumstances here from challenging the actual authority of Captain Milton he is nevertheless, upon a principle which should be as sufficient in admiralty as in equity, not entitled to escape liability for supplies furnished, the necessity for which is not controverted. It seems clear that even in that view of the facts favorable to appellant both the owner and suppliers must be deemed to occupy the position of innocent parties, and as between them, the owner, having placed it in the power of the third person, Milton, to accomplish the act which must result in payment or loss, should not be permitted to shift the loss to the suppliers.

I think the judgment of this Court as to the crew is proper. No articles were signed. They have been paid for a period of time extending beyond that when notice of lack of authority was given and their services terminated.

---

1. Even assuming Milton's authority to hire a crew, since no articles were signed, any contract of hire between them was merely verbal and without a definite term. As such, it was terminable at will by either party. See The Pokanoket, 4 Cir., 156 F. 241.

