H. W. FINDLEY, Claimant, Appellant,
v.
ROBERT C. HERD & CO., Inc., et al., Appellees.

No. 16779.

United States Court of Appeals
Fifth Circuit.

Dec. 12, 1957.

James H. Ammerman, Wigley, McLeod, Mills & Shirley, Galveston, Tex., for claimant-appellant, H. W. Findley.

Edward W. Watson, Lockhart, Watson & Peterson, Galveston, Tex., for libellants-appellees, Robert C. Herd & Co., Inc., and Miglioretti Bros., Inc.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

Libels were brought below by the libellants-appellees against the Steamship Josephine Lanasa for supplies and services furnished the ship during the months of August, 1954 to February, 1955, while the vessel was in the port of Baltimore, Maryland. Appellant filed a claim, as owner, for the release of the vessel and denied the claims of libellants to a lien.

After hearing evidence consisting of depositions, direct testimony and certain exhibits, the trial court filed findings of fact and conclusions of law,[1] holding that the various instruments and arrangements made, which the ap-

1. In substance these were:

*Findings of Fact*

1. West Indies Importing Corporation (herein designated as West Indies) was a Panamanian Corporation and at all times material the capital stock thereof was owned by George Dennis and Vincent Lanasa, who also were the officers of the Corporation.

2. The vessel "Josephine Lanasa" (once called the "Guelph") was a converted corvette of approximately 771 gross tons documented and registered in the Republic of Panama and engaged in the banana trade.

3. West Indies owned and operated the Josephine Lanasa for a period of years prior to Oct. 22, 1953. On Oct. 22, 1953, a transaction was entered into between West Indies, Dennis and Lanasa, on the one hand, and H. W. Findley (father-in-law of Dennis), on the other hand, whereby Findley advanced the sum of $50,000 to be used for various repairs and improvements to the vessel. In this transaction on Oct. 22, 1953, Findley received a note from West Indies in the amount of $50,000 bearing the individual endorsements of Dennis and Lanasa, and was given a bill of sale for the vessel. By a contemporaneous written agreement the purpose of this advance of funds and the execution of the note and bill of sale were recited, and it was further provided (a) that the capital stock of West Indies would be pledged to Findley to secure the payment of this note and the performance of this agreement; (b) that during the term of the agreement no lien or encumbrance would be permitted against the vessel, (c) that until Findley had been paid all sums due under the note and agreement no Master would be hired for the vessel or charter made for any voyage without Findley's approval, and if a charter was made the balance of monies earned after expenses would be applied upon the note, (d) that when Findley had been paid in full the amount due on the note, the expenses of the transaction including reasonable attorney's fees, and the sum of $5,000.00, he would execute a bill of sale to transfer the vessel back to Dennis and Lanasa, and (e) that if West Indies, Dennis or Lanasa became in default under the note and agreement, and failed to cure their default within 20 days after notice, Findley would be under no obligation thereafter to retransfer the vessel.

4. Dennis and Lanasa remained in control and possession of the vessel after Oct. 22, 1953, and expended this $50,000, as well as other monies, for repairs and improvements to the vessel which were contracted and carried out under their sole direction. On Oct. 14, 1954, a supplemental written agreement was made with Findley under which there was a new borrowing of $50,000 from Findley, new notes in that amount were given to him, and the proceeds were applied, in part, to retire an unpaid balance of $16,666.67 on the Oct. 22, 1953, note, and the remainder was designated "to pay to the extent possible, debts and obligations that have risen with respect to the vessel." All other terms of the Oct. 22, 1953 agreement were carried forward by this supplemental agreement.

5. On Feb. 2, 1954, Findley as "owner" executed an instrument designated as a "bareboat charter" of the "Josephine Lanasa" to West Indies which provided, essentially, that the charter-hire should be the payment of the $50,000 note given Findley on Oct. 22, 1953, and that "neither the charterer nor the master of the vessel shall have any right, power or authority to create, incur or permit to be imposed upon the vessel any lien whatsoever except for crew's wages and salvage". The term of this "charter" expired on Oct. 22, 1954, but was extended until July 14, 1955, by a "supplemental charter" made on Oct. 14, 1954. The "supplemental charter" car-

pellant contends vested in him ownership of the vessel so as to give rise to the exception, to the attaching of a lien against a vessel for supplies furnished pursuant to 46 U.S.C.A. § 973, did not do so but in fact and in law created only a chattel mortgage.

Appealing from the judgment entered in accordance therewith, claimant is here urging upon us that, notwithstanding the opinion in McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, and cases following that decision, this court should give him the benefit of an independent evaluation of the facts. In addition, he insists that, if this is not accorded him, the trial court's findings of fact should still be set aside as clearly erroneous.

Arguing the secondary question, whether libellants-apellees discharged their duty, under 46 U.S.C.A. § 973, to exercise reasonable diligence to determine whether the vessel was being operated under a charter party which prevented the affixing of liens against the same, appellant vigorously urges upon us that, within United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361, and our cases of Findley v. Red Top, 5 Cir., 188 F.2d 834, The Western Wave, 5 Cir., 77 F.2d 695, and Tampa Ship Repair & Dry Dock Co. v. Esso Export Co., 5 Cir., 237 F.2d 506, the

ried forward the conditions of the original "charter" excepting that the charter-hire was stated to be the payment of the new notes which had been given on Oct. 14, 1954.

6. All of the foregoing arrangements between West Indies, Dennis and Lanasa on the one hand, and Findley on the other, were intended only as a mortgage of the vessel to Findley and were at all times so regarded between the parties to the transaction. The obligations to repay to Findley the money advanced by him on each occasion were absolute. The bill of sale to Findley was a sham and subterfuge to conceal the true status of West Indies as owner, and was for the purpose of attempting to give Findley as mortgagee a prior if not an exclusive claim against the vessel, to the detriment of any third persons who might otherwise have a lien against the vessel.

7. All services, supplies and store furnished by the two libellants were furnished on the order or instruction of Dennis or Lanasa or of the Master of the vessel, the vessel received the benefit thereof in each instance, and the charges made were reasonable and customary. During the times when these services, supplies and stores were being furnished the libellants understood West Indies to be the owner of the vessel, and the situation was so represented to them by Dennis and Lanasa. The libellants at this time did not know of Findley or of the existence of the alleged "charter", and made no inquiry as to either. The master of the vessel did not know the terms of the alleged "charter" and did not have a copy of that instrument aboard.

*Conclusions of Law:*

1. The subject-matter of this litigation is within the Admiralty and Maritime Jurisdiction of this court.

2. At all times material West Indies Importing Corporation was the true and bona fide owner of the Motor-Vessel "Josephine Lanasa".

3. The claimant, H. W. Findley, was not at any time material hereto the true and bona fide owner of this vessel but had only the interest of a mortgagee.

4. The services rendered either directly by Robert C. Herd & Co. or for which its disbursements were made, were furnished to the vessel upon the order of the owner and entitled Herd to a Maritime lien.

5. The supplies and stores furnished by Miglioretti Bros. were furnished to the vessel upon the order of the owner and entitled Miglioretti to a Maritime lien.

6. The lien of Findley upon this vessel was not a "preferred mortgage lien" within the protection of the Ship Mortgage Act (Title 46, U.S.Code, Secs. 911–975) and even if so considered would be subordinate to the liens of these libellants for services and supplies furnished to a foreign vessel in a port of the United States (Title 46, U.S.Code, Sec. 951, as Amended June 29, 1954).

7. The libellant Robert C. Herd & Co. is entitled to a decree in rem for the amount of $4914.32, with interest thereon to run from the 12th day of Aug., 1955, and the libellant Miglioretti Brothers is entitled to a Decree in rem for the amount of $3308.19 with interest thereon to run from the 12th day of Aug., 1955.

libellants did not exercise proper diligence and may not have their lien.

The appellees, in reply to appellant's first point, urge upon us that the evidence, that appellant did not have title to the boat but was only a mortgagee, is overwhelming and that the findings are not clearly erroneous but are strongly supported by the evidence.

In the alternative, if the court should disagree with their view, appellees have filed a motion under General Admiralty Rule 45, 28 U.S.C.A. and Admiralty Rule 12 of this court, 28 U.S.C.A. for leave to make proof, as newly discovered evidence, of a letter from the claimant to Lanasa dated July 22, 1955, which libellants claim further strongly supports their contention and the district judge's findings.

The appellant, not challenging appellees' right to make the additional proof, if they can show that the evidence is really newly discovered and the failure to offer it was not the result of negligence, ask for the right, if the testimony is to be taken, to make counter proof of the circumstances surrounding its writing and delivery.

A careful study of the record convinces us that the district judge correctly apprehended the evidence and as correctly found the facts, indeed we think that the sheer weight of probability supports and almost compels the findings. When the circumstance of the relation between Findley and Dennis is considered in the light of the testimony showing that Findley's sole purpose in the matter was to aid Dennis, we think it clear that the testimony and the instruments taken together show inescapably that Findley was not buying a ship but lending his son-in-law money while trying to protect himself by arrangements which, interfering as little as possible with the operation of the vessel in fair financial weather, would furnish him at least the form of protection in case the worse came to the worst.

Because we are of the clear opinion that the district judge was right and because the request to take additional testimony was provisionally made, it will be unnecessary for us to act upon appellees' motion to take additional evidence or to determine the subordinate question in the case, whether if title were in Findley, appellees, in giving credit, acted with due care.

On the case as a whole, we think the judgment was right and that it should be affirmed.

Affirmed.