FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 MAY 30 AM 9: 27

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHAEL MCPHERSON, | ) | No. 75059-3-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| FISHING COMPANY OF ALASKA, | ) | |
| | ) | |
| Respondent. | ) | FILED: May 30, 2017 |
| | ) | |

LEACH, J. — Michael McPherson appeals the trial court's summary judgment dismissal of his lawsuit against his former employer, Fishing Company of Alaska. McPherson claims that the "period of effectiveness" term in his employment contract prohibited Fishing Company from firing him without cause during that period. Because McPherson's contract contained an at-will employment provision and the statute requiring a period of effectiveness does not change the historical rule of at-will employment in maritime contracts, we affirm.

## FACTS

Michael McPherson signed an "Employment At-Will Contract" with Fishing Company of Alaska in September 2015. Fishing Company agreed to pay McPherson $200 per day as an assistant engineer on a Fishing Company vessel. The contract also said that Fishing Company employed McPherson at will and

could "terminate [him] at any time, with or without notice and with or without cause."[1] The contract period was 90 days. Fishing Company fired McPherson 18 days in.

McPherson sued, alleging Fishing Company wrongfully fired him.[2] He asked for lost wages and other relief, asserting that because 46 U.S.C. § 10601 requires a fishing agreement to include a "period of effectiveness," he could not be fired without cause during that period.

The parties filed cross motions for partial summary judgment. The trial court granted Fishing Company's motion. The trial court then entered a final judgment in favor of Fishing Company. McPherson appeals.

### STANDARD OF REVIEW

We review an order granting summary judgment de novo, making the same inquiry as the trial court.[3] We will affirm summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[4]

---

[1] The contract also includes penalties of $50 per day on the vessel and/or $1,000 in liquidated damages for an employee who quits during the employment period.

[2] Fishing Company told the trial court that it did not concede that it fired McPherson without cause if the court denied its motion.

[3] Owen v. Burlington N. Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005).

[4] Owen, 153 Wn.2d at 787.

-2-

## ANALYSIS

When deciding an admiralty or maritime case, this court must follow substantive maritime statutes and common law and may not order a remedy that harms the uniformity of that law.[5] A court interpreting a maritime contract must apply federal maritime law.[6]

Legislation favoring seamen is "largely remedial and calls for liberal interpretation in favor of the seamen."[7] Since 1813, a federal statute has required fishing agreements to be in writing.[8] This ensures that seamen "have a clear and enforceable written commitment defining the consideration for which they risk their life at sea"[9] and protecting them "'from the duress, coercion, or deception that might result if masters were permitted to ship them out to sea without first providing written articles.'"[10]

---

[5] Hoddevik v. Arctic Alaska Fisheries Corp., 94 Wn. App. 268, 273, 970 P.2d 828 (1999); Robinson v. Alter Barge Line, Inc., 513 F.3d 668, 671 (7th Cir. 2008) (Maritime or admiralty law is "the body of legal doctrines, most judge-made, that govern the legal rights and duties of the users of navigable waterways.").

[6] See In re Fitzgerald Marine & Repair, Inc., 619 F.3d 851, 858 (8th Cir. 2010); Oil, Chemical & Atomic Workers, Int'l Union v. Mobil Oil Corp., 426 U.S. 407, 421-22, 96 S. Ct. 2140, 48 L. Ed. 2d 736 (1976) (Powell, J., concurring).

[7] Isbrandtsen Co. v. Johnson, 343 U.S. 779, 782, 72 S. Ct. 1011, 96 L. Ed. 1294 (1952).

[8] See Doyle v. Huntress, Inc., 301 F. Supp. 2d 135, 143 (D.R.I. 2004) (discussing 46 U.S.C. § 531, recodified as § 10601 in 1988), aff'd, 419 F.3d 3 (1st Cir. 2005).

[9] Flores v. Am. Seafoods Co., 335 F.3d 904, 907 (9th Cir. 2003).

[10] Flores, 335 F.3d at 913 (quoting Seattle-First Nat'l Bank v. Conaway, 98 F.3d 1195, 1199 n.2 (9th Cir. 1996)).

Throughout this long history of written maritime employment contracts, courts have held that "a seaman is an employee-at-will and may be discharged for any or no reason."[11] McPherson acknowledges this history but claims that Congress changed this rule with a 1988 amendment to 46 U.S.C. § 10601.

This statute currently provides,

### §10601. Fishing agreements

(a) Before proceeding on a voyage, the owner, charterer, or managing operator, or a representative thereof, including the master or individual in charge, of a fishing vessel, fish processing vessel, or fish tender vessel shall make a fishing agreement in writing with each seaman employed on board if the vessel is—
(1) at least 20 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title; and
(2) on a voyage from a port in the United States.

(b) The agreement shall—
(1) state the period of effectiveness of the agreement;
(2) include the terms of any wage, share, or other compensation arrangement peculiar to the fishery in which the vessel will be engaged during the period of the agreement; and
(3) include other agreed terms.

Congress added the "period of effectiveness" requirement in 46 U.S.C. § 10601(b)(1) as part of the Commercial Fishing Industry Vessel Safety Act of

---

[11] Meaige v. Hartley Marine Corp., 925 F.2d 700, 702 (4th Cir. 1991) ("Only one exception exists to the general at-will employment rule in maritime law: a seaman may file a personal injury action without retaliation."); see Smith v. Atlas Off-Shore Boat Serv., Inc., 653 F.2d 1057, 1060 (5th Cir. 1981); The Pokanoket, 156 F. 241, 243 (4th Cir. 1907); Findley v. Red Top Super Markets, Inc., 188 F.2d 834, 836-37 (5th Cir. 1951).

1988.[12] McPherson contends that this amendment changed the longstanding rule that maritime employment contracts are at will by default. We disagree.

This court "will not assume that the Legislature would effect a significant change in legislative policy by mere implication."[13] Moreover, because of Congress's involvement in the field, the United States Supreme Court has cautioned courts to practice restraint in shaping maritime common law.[14] Applying these principles, we would expect much clearer language if Congress had intended to reverse nearly two centuries of maritime precedent as McPherson proposes.[15]

The Ninth Circuit has twice held, when examining other issues, that § 10601 is "perfectly clear facially" "[a]s a matter of simple statutory construction."[16] The statute is equally clear in this context. Its language is unambiguous: it requires that maritime employment contracts be in writing and include a "period

---

[12] Commercial Fishing Industry Vessel Safety Act of 1988, Pub. L. No. 100-424, § 6(a), 102 Stat. 1591-92.

[13] State v. Calderon, 102 Wn.2d 348, 351, 684 P.2d 1293 (1984).

[14] Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 820, 121 S. Ct. 1927, 150 L. Ed. 2d 34 (2001); Miles v. Apex Marine Corp., 498 U.S. 19, 27, 111 S. Ct. 317, 112 L. Ed. 2d 275 (1990) (both pertaining to maritime personal injury suits).

[15] See Doyle, 301 F. Supp. 2d at 143.

[16] Seattle-First, 98 F.3d at 1197 (holding that six-month statute of limitations did not apply to seaman's claim based on void oral contract); Harper v. U.S. Seafoods LP, 278 F.3d 971, 975 (9th Cir. 2002) (holding that § 10601 requires employer to sign written employment contract with seaman).

of effectiveness."[17] It contains no words that preclude employees and employers from agreeing that either may terminate employment without cause. It does not mention termination at all. Instead, the same subsection requires contracts to include "other agreed terms."[18]

McPherson does not rely on any judicial method of statutory interpretation to support his reading of the statute. Instead, he asks rhetorically why Congress would require contracts to include a period of effectiveness if employers could still terminate them at will. He ignores case law holding that a stated period of effectiveness does not preclude at-will termination. In Berg v. Fourth Shipmor Associates,[19] the Ninth Circuit held that a seaman's contract did not guarantee him for-cause employment even though it stated a period of employment. Likewise, in Brekken v. Reader's Digest Special Products, Inc.,[20] the plaintiff's employment contract stated that it had a 12-month period "unless sooner terminated." It then stated that either party could terminate employment. The Seventh Circuit held the contract was unambiguous: the 12-month employment period was "merely an expectation and not a right," and the phrase "unless

---

[17] This statute appears to be the only one in the United States Code to use "period of effectiveness" in the context of employment contracts.

[18] 46 U.S.C. § 10601(b)(3).

[19] 82 F.3d 307, 311-12 (9th Cir. 1996).

[20] 353 F.2d 505, 506 (7th Cir. 1965).

sooner terminated" qualified the employment period.[21]   McPherson cites no contrary authority.

McPherson instead appeals to notions of fairness, asking rhetorical questions and citing facts outside the record in his briefing.   He asserts that guaranteed periods of employment are important to fishermen because they often perform unpaid work during the preseason "fit-out" in anticipation of earnings during the season.[22]   He asks, "On which side of the issue will this Court be counted:   The side of seamen, wards of the admiralty court, or on the side of fishing companies, who claim the right to fire seamen for no reason at all after employment has been promised for a set term?"   This question assumes an incorrect view of the judiciary's role.   "The [United States] Supreme Court has counseled that courts are not free to rewrite admiralty laws simply because the result seems unfair in a particular case."[23]   Even if the record supported and we accepted McPherson's assertions about the fishing industry, this court must still interpret the law in a manner consistent with its text and judicial precedent.

Because the statute is unambiguous, we need not consider legislative history to discern Congress's intent.[24]   In any case, McPherson presents none to

---

[21] Brekken, 353 F.2d at 506.

[22] McPherson's counsel conceded at oral argument that engineers like McPherson do not do this type of unpaid preseason work.

[23] Harper, 278 F.3d at 976 (citing Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575-76, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982)).

[24] United States v. Charles George Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987).

support his position. Instead, he concedes that none exists, insisting "the intent of Congress is so obvious" Congress would not have discussed it. We disagree, finding it hard to believe that Congress would make such a big change in the law without comment.

In sum, the period-of-effectiveness requirement in § 10601 does not affect parties' ability to contract for at-will employment. Instead, the statute means what it says: an employer must make a written agreement with a seaman, and that agreement must state a period of effectiveness. The agreement must also state other agreed terms. These agreed terms can include one for at-will employment.

## CONCLUSION

Because the statute's text and federal case law do not support the rule that McPherson proposes, we affirm.

_Leach, J._

WE CONCUR: